Josiah Baylies, Impleaded, etc.,

v.

Josephine M. Curry.

*Civil Rights—Theatre—Discrimination because of Color—Penalty—Form of Action.*

1.  One who has been refused the full and equal enjoyment of the accommodations of a theatre because of color, may maintain an action on the case to recover the penalty prescribed by the act of 1885, such penalty not being certain in amount.

2.  It is a violation of the statute in question to require colored patrons of a theatre to occupy particular rows of seats.

[Opinion filed January 17, 1889.]

Appeal from the Circuit Court of Cook County; the Hon. Arba N. Waterman, Judge, presiding.

Messrs. McMurdy & Job, for appellant.

Under the common law, common carriers could not separate negroes and white persons from mere caprice or race prejudice; but if the intention was to prevent conflicts and to preserve order and decorum, a rule by which colored persons were required to occupy seats separate from white persons, equally desirable and comfortable, has been held to be reasonable and lawful. C. & N. W. R. R. Co. v. Williams, 55 Ill. 186; W., C. & P. R. R. Co. v. Miles, 55 Pa. St. 211; Green v. Bridgeton, 9 Cent. L. J. 206; The Sue, 22 Fed. Rep. 843; Logwood v. Memphis, 23 Fed. Rep. 319; Murphy v. W. & A. R., 23 Fed. Rep. 637; Hall v. DeCuir, 95 U. S. 487.

How far has the present statute changed the common law? Appellant claims that it does not change the common law in any respect but to limit the remedy for its breach.    This statute is an exact reproduction of the civil rights act of the United States, which is most easily found in Desty's Federal Procedure (6th Ed.), 781; 18 U. S. Stats. 336; 1 Sup. Rev. Stats. 148.    That act was, however, decided to be unconstitu-

tional, and we therefore have no light from decisions under it.

An act similar to this has been declared constitutional in Louisiana. But the decisions wherein it was so declared are otherwise consistent with appellant's claim. In De Cuir v. Benson, 27 La. An. 5, the court says: "In truth, the right of the plaintiff to * * * damages would be the same whether [the similar] act * * * existed or not." They held it to be declaratory of the common law. The decision of this case is rested upon an Iowa decision which turns upon the fact that in that case the negro was compelled to accept "accommodations inferior to those given to the white man." It is not otherwise intimated in this Louisiana decision whether the court considered the accommodations offered the plaintiff in this case were "inferior," and it must therefore be presumed that the court so considered, and that it decided the case on that assumption. The Supreme Court of the United States, in the leading case of Hall v. De Cuir, 96 U. S., decides nothing pertinent to the case at bar except in the concurring opinion of Mr. Justice Clifford, who doubts (p. 499) "whether the denial to a colored female of a passage in the cabin assigned to white female passengers is a denial of equal rights and privileges * * * provided the applicant was offered a passage in the lower cabin, with equally convenient accommodation," but adopts, for that particular case only, as he says, the ruling to the contrary of the Louisiana courts. We submit that Mr. Justice Clifford has misinterpreted the Louisiana decisions, all of which are cited at page 500, and we submit that the Louisiana courts have not in these cases decided that a person of color was discriminated against by reason of the enforcement of a rule of a steamboat company providing for the separation of the races, the accommodations afforded each race being equal.

In the majority of the decisions bearing on the question under discussion the distinction is uniformly maintained between "equal" and "identical" rights, privileges, etc., and it is upon this distinction that appellant here rests his claim of the right to separate the white and colored patrons of his the-

Baylies v. Curry.

atre; for in the offer to prove certain facts, which was over-ruled by the court below, it was expressly stated that the seats assigned to colored persons in appellant's theatre were in all respects equal in desirability to those assigned to white persons, and that these seats were sold in all parts of the house, but that the negroes were excluded from sitting in the same row with white persons; and, in passing, we may say that the operation of this rule was absolutely "equal," because, while the negroes were excluded from sitting in the same row with white persons, the white persons were thereby excluded from sitting in the same row with negroes.

The rule in question, if properly stated, would be: "Negroes and white persons are not seated in the same row," rather than: "Colored people are seated in rows by themselves." What inequality is there in this rule? It is as equal in its operation as a statute making it an offense for a negro and a white person to marry, and it has been expressly held that such a statute does not discriminate against the negro, but operates equally upon the two races, insomuch as it punishes the negro and the white person alike for the same offense. Ex rel. Hobbs and Johnson, 1 Woods' C. C. 537.

The nearest approach to a decision of the question here discussed which has arisen in our State is to be found in Chose v. Stephenson, 71 Ill. 383, and in People v. Board of Education, 101 Ill. 310. These cases arose under our free school act. In the former case it appeared that a board of education had established a separate school for three or four colored children. The court held the trustees were properly enjoined from appropriating the district funds for the purpose of maintaining the same, but says: "Had the district contained colored children sufficient for one school, and white children for another, and had the directors, in good faith, provided a separate room for each, where the facilities for instruction were entirely equal, that would have presented a question not raised by this record and upon which we express no opinion." Thus it appears that the case was decided upon an economic basis solely. In the latter case a single school was provided for colored children, and one in each of the eight school dis-

tricts of Quincy for white children. Colored children of school age resided in each of the districts. The result was that colored children, in most cases, had to travel a greater distance to school than white children, and it was on this point that the case was decided. Of course no decision was rendered as to whether colored and white children might not be separated in the same district schoolhouse. It has elsewhere been decided that separate schools can lawfully be provided for the two races. People v. Gallagher, 93 N. Y. 441; Bertonneau v. Directors, 3 Woods' C. C. 179; State v. Duffy, 7 Nev. 345.

This statute is penal. St. Louis v. Hill, 11 Ill. App. 248.

Debt will lie on a penal statute, where the form of action is not therein specified. Vaughan v. Thompson, 15 Ill. 41; Kerr v. Davis, 38 Tenn. 73; Blackburn v. Baker, 7 Porter (Ala.) 290.

" In the case of the party grieved, where a statute prohibits the doing of anything under a penalty to be paid to the party grieved, and does not prescribe the mode of recovery, it shall be recovered in an action of debt." Espinasse's Penal Actions, 57. Case will not lie on such a statute. Mount v. Hunter, 58 Ill. 247.

Mr. EDWARD H. MORRIS, for appellee.

Providing accommodations equally as good is not a compliance with a statute which provides that there shall be no discrimination or exclusion on account of color. It is merely " an ingenious attempt to evade a compliance with the obvious meaning of the requirements" of the law. Washington, Alex. & G. R. R. Co. v. Brown, 17 Wall. 445; Board of Education v. Tinnon, 13 Cent. L. J. 274.

Such was the construction placed upon an act of Louisiana which provided that proprietors of street cars, stage coaches, etc., should make no discrimination on account of race or color. De Cuir v. Benson, 27 La. Ann. 1; Sauvinet v. Walker, 27 La. Ann. 14; Hart v. Hoss, 22 La. Ann. 517.

The case of Chase v. Stephenson, 71 Ill. 383, did not arise under the act of 1874, which takes away the power, if any a

Baylies v. Curry.

school board had, to provide separate schools for colored children, but the case in The People v. Board of Education, 101 Ill. 310, did; and there our Supreme Court expressly declares—not upon " an economic basis solely," as suggested by counsel for appellant, but in keeping with the language of the act of 1874—that school boards can not deprive colored children of the right to attend the public schools.

GARY, J.    This is an action on the case under the act of June 10, 1885, "Civil Rights," by the appellee, a colored woman, for being refused, for the reason that she is a colored woman, the full and equal enjoyment of the accommodations, etc., of a theatre conducted by appellant.    A motion in arrest of judgment on the ground that the action ought to have been debt and not case being denied, that denial is now assigned as error.

The form of the action is right.    The case cited by appellant, Mount v. Hunter, 58 Ill. 246, is an authority against him.    " One of the divisions of statutes is remedial and penal.    A remedial statute has for its object either to redress some existing grievance, or to introduce some regulation or proceeding conducive to the public good.    The remedy for the breach of a remedial statute is by an action for damages sustained from such a breach, at the suit of the party injured. A penal statute imposes a penalty upon the commission of the prohibited offense, which is recovered by an action of debt, in the name of the informer, for his own use, or *qui tam.* The statute fixes the amount of the penalty, and hence the action of debt is appropriate, while, in actions under remedial statutes, the party injured recovers the amount of injury he has sustained by a breach of the statute, and case is generally the appropriate remedy."    P. 247 of case cited.

The statute under which this action is brought declares the right to " full and equal enjoyment of the accommodations," etc., and enacts that for denying them the person so doing " shall, for every such offense, forfeit and pay a sum not less than twenty-five dollars nor more than five hundred dollars, to the person aggrieved thereby, to be recovered in any court

of competent jurisdiction," without prescribing the form of action.

"Whenever a statute prohibits an injury to an individual, or enacts that he shall recover a penalty or damages for such injury, though the statute be silent as to the form of the remedy, this action (case) may be supported." 1 Ch. Pl. 161. And debt is not sustainable unless the demand be for a sum certain, or which can readily be reduced to a certainty. Ib. 127.

Here the forfeiture to the person aggrieved is not certain in amount, and the range of limits prescribed as the measure of recovery give a minimum below which the caprice, and beyond which the passion, of a jury shall not fix damages, in their nature not susceptible of mathematical adjustment.

By the evidence, the complaint of the appellee that the appellant refused her the full and equal enjoyment of the accommodations of his theatre, solely because of her color, is fully sustained, and the only questions remaining for this court to pass upon arise upon the refusal of the court to admit evidence offered as to the reasons of the policy of the house to keep colored people separate from the white people, set off by themselves, and upon instructions refused, presenting the same question in part.

The fact that such was the policy had been proved by the appellee, and the appellant offered, but was not permitted to show, that it was a rule of the house that colored people should have one row of seats to themselves in each part of the house, or as many rows as the tickets which they bought would call for, because the house was in a "hard quarter" of the city, and therefore it was necessary for the theatre to make stringent rules, and be extremely cautious and careful, not only with reference to the colored, but with reference to the white people, both as to who got into the theatre, and as to where they sat, and next to whom they sat, to avoid collisions, both on account of race prejudice, if it existed, and on account of other more substantial reasons. That in the immediate neighborhood were quartered some of the worst

Baylies v. Curry.

characters of the city, some of whom were colored. That there had been disturbances in the theatre, some of which were caused by colored people. That the appellant was not actuated by any question of color of skin. That colored persons were given the same advantages for the same price in all parts of the theatre that white persons had, with the exception only that the colored persons were assigned to a particular row of seats. This exception is contrary to the statute. In Railroad Co. v. Brown, 17 Wall, 445 (a colored woman being the plaintiff), the charter by Congress of the company provided "that no person shall be excluded from the cars on account of color." She bought a ticket from Alexandria, in Virginia, to the city of Washington. The distance is only seven miles. There were two cars, alike comfortable; one was set apart for colored persons and the other for "white ladies and gentlemen accompanying them." The case is ambiguous as to where colored gentlemen accompanying white ladies, or gentlemen of no color with no ladies would be permitted to ride.

In going either way the colored car was in front, so that "colored" going south, was "white" coming north, as the cars themselves were not, but only the use of them, reversed. Here was certainly a case of "equal" accommodations.

It was only necessary for a colored person who wished to ride in the "white" car to imagine himself or herself going the other way from that he or she intended, and the car would then be "white." The plaintiff, against the direction of the servant of the company, who told her to get into the front car, persisted in going into the other, and he put her out. She recovered $1,500, and Judge Davis, for the Supreme Court, said that the regulation of the company assigning colored persons to one, and excluding them from another car, was "an ingenious attempt to evade a compliance with the obvious meaning of the requirement. It is true that the words, taken literally, might bear the interpretation put upon them by the plaintiff in error, but evidently Congress did not use them in any such limited sense.   *   *   *   It told this company, in substance, that it could extend its road within the district, as desired, but that this discrimination must cease, and the colored

and white race, in the use of the cars, be placed on an equality."

The argument of appellant that the operation of the rule of this theatre "was absolutely 'equal' because while the negroes were excluded from sitting in the same row with white persons, the white persons were thereby excluded from sitting in the same row with negroes, would not, perhaps, have been applicable in the construction of the charter of the road in that case, but if it is a good one, it affords an easy method of evading the law in many of the cases provided for by it. It is the custom, so general that the court can not affect ignorance of it, that one buying tickets, with seats reserved, to any public amusement, has his choice of any unsold for which he is willing to pay the price. No white man is ever denied that choice because he is white. If so denied because he is colored, "full and equal enjoyment" is denied. And it is not for the residents of any part of the city, however disreputable they may be, to nullify the law. If the appellant caters for such a class, he must abide the consequences of such lawlessness as he can not, with or without police assistance, restrain.

These views dispose of all the justifications or excuses urged by appellant for taking any notice of the complexion of the appellee, and the judgment is affirmed.

*Judgment affirmed.*